IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | |
|---|---|
| DEMETRIUS RASHARD LUKE, | ) |
| Plaintiff, | ) Civil Action No. 1:19-CV-00122-LAG |
| v. | ) |
| JAMEEL H. GULLEY, | ) |
| Defendant. | ) |

**DEFENDANT'S MOTION FOR SANCTIONS AND
INCORPORATED MEMORANDUM OF LAW IN SUPPORT**

COMES NOW Defendant Gulley and submits his Motion for Sanctions. For the reasons set forth below, the Court should sanction Plaintiff's counsel Mr. James Finkelstein.

### I.     BACKGROUND

On July 20, 2021, Mr. Finkelstein transmitted a Letter ("Letter") to the Mayor of Albany, each member of the Albany City Commission, and three media outlets. Ex. A. In this Letter, Mr. Finkelstein accused Defendant's Counsel ("Counsel") of defrauding the City of Albany, lying, and lying to the Court.[1] Id. In the remainder of the Letter, Mr. Finkelstein makes most of the same arguments that appear in his filings, while also offering extensive commentary on the fees paid to Defendant's Counsel. While this Letter attacking Counsel's integrity to the press prompted this

---

[1] Mr. Finkelstein's co-counsel—Mr. Howard Stiller—is an attorney of record in this litigation and certainly within the grasp of the Court's inherent sanction power. JTR Enter., LLC v. Colombian Emeralds, 697 Fed. Appx. 976, 986 (11th Cir. 2017) (finding an attorney who was not even an attorney of record could be sanctioned under the court's inherent authority). However, Defendant's Counsel has no reason to believe Mr. Stiller is responsible for the below conduct, nor does Defendant believe he should be sanctioned. It is Counsel's impression that Mr. Stiller has been professional throughout this litigation. Similarly, Counsel does not believe Plaintiff Demetrius Luke has any culpability for Mr. Finkelstein's actions.

Motion, as detailed below, this Motion is made in light of Mr. Finkelstein's history and conduct throughout this case.

Mr. Finkelstein has filed several motions throughout this litigation seeking to sanction Counsel. Mr. Finkelstein's own words, the meritless nature of these motions, and the frequency with which they are filed, demonstrates his bad faith conduct and intent to cause undue delay and unnecessary expense.

On July 19, 2019, this action was initiated upon removal from state court. Doc. 1. On July 23, 2019, Defendant responded by filing a motion to dismiss, arguing Plaintiff failed to state a claim for which relief could be granted, and that Defendant Gulley was entitled to qualified immunity. Doc. 3. Defendant also filed a motion to stay, seeking a stay of discovery until the Court ruled on Defendant's motion to dismiss. Doc. 4. On September 20, 2019, Plaintiff—through his counsel Mr. James Finkelstein—filed a motion for sanctions. Doc. 14.

In his first motion for sanctions, Mr. Finkelstein argued Counsel should be sanctioned for "filing two frivolous motions for the purpose of delay," and for "deliberately making false statements of fact in a pleading." Doc. 14 at 1. Specifically, Mr. Finkelstein argued Defendant's motion to dismiss was frivolous because it was contrary to "black letter law of the United States Supreme Court . . ." Doc. 14 at 3. Mr. Finkelstein argued Defendant's motion to stay was frivolous because it was filed solely to delay the case. Doc. 14 at 4. On April 16, 2020, the Court issued an Order denying Mr. Finkelstein's first motion for sanctions. Doc. 36. It its Order, the Court noted that neither of Defendant's motions were frivolous, as evidenced by the fact that the Court granted each of them. Doc. 36 at 3. The Court also explained stays of discovery are quite common where a party files a motion to dismiss. Id. Finally, the Court stated it had already discussed in a prior Order, that "the statements which Plaintiff argues are deliberately false are meritorious legal

arguments or statements drawn from documents which Defendant properly attached to his Motion to Dismiss." Id.

On February 16, 2021, the Court entered a Protective Order in this case to protect the identity of a confidential informant. Doc. 58. On March 22, 2021, Plaintiff filed a motion to vacate the protective order. Doc. 68. In this motion, Plaintiff argued the Protective Order should be vacated because (1) the identity of the confidential informant was "not in fact 'confidential'" and (2) that Defendant made "deliberate misrepresentations of fact to [the] Court. Id. at 2–3. In this motion, Plaintiff alleged Defendant made the following misrepresentations:

> (1) that the Informant was confidential; and (2), that the Informant had provided information to the Defendant during his March 13, 2021, interview inculpatory of the Plaintiff as a basis for Defendant to have sworn out an arrest warrant for the Plaintiff, when in fact the video provides conclusive evidence that Defendant is liable to Plaintiff.

Id. at 4. On May 6, 2021, the Court issued an Order denying Mr. Finkelstein's motion to vacate. Doc. 80. In its Order, the Court again informed Mr. Finkelstein of the distinction between advocacy and misrepresentation. Id. at 3 n.1.

On March 10, 2021, Mr. Finkelstein filed a motion to compel and for sanctions. Doc. 65. In this motion, Mr. Finkelstein asks the Court to sanction Counsel based upon the same (or similar) alleged misrepresentations cited by him in his first motion for sanctions. Doc. 65 at 15–16. Mr. Finkelstein did so despite the Court having twice issued Orders informing him the statements cited were not misrepresentations. See Docs. 27, 36. On July 11, 2021, Mr. Finkelstein filed a motion to modify the protective order in the case for the purpose of sending protected materials to the general counsel of the State Bar of Georgia. Doc. 87. In this motion, Mr. Finkelstein again accuses Counsel of making misrepresentations, doc. 87 at 1–5, despite clear guidance from the Court on the difference between advocacy and fraud. See docs. 36 at 3, 80 at 3.

Finally, On July 20, 2021, Mr. Finkelstein transmitted the above-mentioned letter in which he personally attacks Counsel's integrity.[2] Ex. A. In addition to the above, Mr. Finkelstein has sent a number of emails to Counsel related to this case. As discussed in greater detail below, two emails sent around the time of his Letter, and one sent a few months prior, shed light upon the intent behind his conduct throughout this lawsuit.

## II. ARGUMENT AND CITATION OF AUTHORITY

As detailed above, Mr. Finkelstein has engaged in a long pattern collateral attacks, for the purpose of distracting from the merits of the case, causing undue delay, and creating unnecessary expense. In doing so, Mr. Finkelstein has also violated this Court's Local Rules and otherwise engaged in conduct that prejudices the administration of justice.

### A. The Court's Power to Sanction

Under Federal Rule of Civil Procedure 11, by presenting to the court a pleading, an attorney certifies that to the "best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances[,] . . . it is not being presented for any improper purpose . . . ." Fed. R. Civ. P. 11(b)(1). "Rule 11[(b)(1)] defines the term 'improper purpose' to include factors 'such as to harass or to cause unnecessary delay or needless increase in the costs of litigation.' The factors mentioned in the rule are not exclusive. If a complaint is

---

[2] In his Letter—and in electronic correspondence to Counsel accompanying his Letter, Ex. B, —Mr. Finkelstein implies that the First Amendment fully protects his conduct. As courts have noted "to the extent [an attorney] appears to be under the impression that [they are] free to disparage the character of litigants, counsel or the Court under the guise of 'free speech' or 'opinion,' [they are] mistaken." Maus v. Ennis, No. 6:10-cv-1904, 2011 U.S. Dist. LEXIS 100429, at *5 n.2 (M.D. Fla. Aug. 17, 2011); see Gentile v. State Bar of Nevada, 501 U.S. 1030, 1074–75 (1991) (holding that speech otherwise entitled to full constitutional protection may nonetheless be sanctioned if it obstructs or prejudices the administration of justice); Thomas v. Tenneco Packaging Co., Inc., 293 F.3d 1306, 1321 (11th Cir. 2002) (affirming imposition of sanctions under inherent authority where attorney presented documents "strewn with generalizations and conclusory comments" that impugned the character of opposing counsel).

not filed to vindicate rights in court, its purpose must be improper." In re Kunstler, 914 F.2d 505, 518 (4th Cir. 1990). "[T]he purpose to vindicate rights in court must be central and sincere." Id. By its very terms, Rule 11 applies only to the pleadings or other filings in a case. Fed. R. Civ. P. 11.

> Title 28, United States Code, §1927 provides that:
>
> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927. The focus of Section 1927 is solely on conduct that "multiplies the proceedings . . . unreasonably and vexatiously." In re Engle Cases, 283 F. Supp. 3d 1174, 1224 (M.D. Fla. 2017) (quoting 28 U.S.C. § 1927). "[Section] 1927 reaches further than Rule 11 in the kinds of conduct that may be punished. For example, a basic requirement of Rule 11 is that there be a writing, but § 1927 does not require a writing and instead reaches any misconduct that results in a proliferation of proceedings." Georgene M. Vairo, *Rule 11 Sanctions: Case Law, Perspectives, and Preventative Measures*, § 12.03[a][3] (Richard G. Johnson, eds., 3d ed., ABA Publishing 2004). "Unlike Rule 11, which is aimed primarily at pleadings, under [S]ection 1927 attorneys are obligated to avoid dilatory tactics throughout the entire litigation." Byrne v. Nezhat, 261 F.3d 1075, 1106 (11th Cir. 2001), *abrogated on other grounds by* Bridge v. Phoenix Bond & Indem. Co., 553 U.S. 639 (2008). Thus, for instance, oral statements during a hearing may be "subject to sanctions under 28 U.S.C. § 1927 as evidence of 'dilatory tactics.'" HD Brous & Co., Inc. v. Mrzyglocki, Case No. 03 Civ. 8385 (CSH), 2004 WL 376555, 2004 U.S. Dist. LEXIS 3095, at *47 (S.D.N.Y. Feb. 26, 2004) (citing United States v. Int'l Brotherhood of Teamsters,

948 F.2d 1338, 1345 (2d Cir. 1991)). Nonetheless, Section 1927—like Rule 11—is limited to specific conduct.

In addition to the authority granted by statute or rule, federal courts possess the power to sanction under their inherent authority. "Courts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence and submission to their lawful mandates." Chambers v. NASCO, 501 U.S. 32, 43 (1991). A court's inherent powers "are governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." Id. at 43; see also In Re Finkelstein, 901 F.2d 1560, 1564 (11th Cir. 1990) ("Because lawyers are officers of the court which granted admission, such courts are necessarily vested with the authority, within certain limits, to impose reasonable sanctions for lawyer misconduct."). Federal district courts have "inherent authority to sanction parties appearing before [them] for acting in bad faith, vexatiously, wantonly, or for oppressive reasons." Sassower v. Field, 973 F.2d 75, 81–82 (2d Cir. 1992).

"Whereas each of the other mechanisms reaches only certain individuals or conduct, the inherent power extends to a full range of litigation abuses." Chambers, 501 U.S. at 44, 46. The "inherent power of a court can be invoked even if procedural rules exist which sanction the same conduct." Id. at 49. The Supreme Court has held that Rule 11, § 1927, the inherent power of the court, and any of several other rule and statutory provisions under which sanctions may be imposed, are "complementary, not mutually exclusive." Scott v. Sanders, 789 F. Supp. 2d 773, 775 (E.D. Ky. 2011) (citing Chambers, 501 U.S. at 46–50). While some of Mr. Finkelstein's conduct falls under the umbrella of Rule 11 or Section 1927, his conduct in the aggregate may require the Court to act under its inherent authority.

**B.      Mr. Finkelstein's July 20, 2021 Letter Warrants Sanction**

The Standards of Conduct found in the Local Rules of the United States District Court for the Middle District of Georgia provide that an attorney must "communicate respectfully with other lawyers." Middle Dist. Rules, Standard of Conduct A(2). A lawyer also must "avoid creating unnecessary animosity or contentiousness," Standard A(7), and "avoid setting forth allegations against another lawyer unless relevant to the proceeding and well founded." Standard A(8). With respect to "Written Submissions to a Court, Including Briefs, Memoranda, Affidavits and Declarations," Standard B(3)(b) specifically states that "neither written submissions nor oral presentations should disparage the intelligence, ethics, morals, integrity or personal behavior of another lawyer or his/her client, unless such matters are directly and necessarily in issue." Standard B(3)(b). In addition to these Rules, the Court is authorized to sanction parties for improper conduct pursuant to its inherent powers.

In prior court filings, Mr. Finkelstein made accusations to the judicial officer presiding over the case, who has the power affect its outcome and to control the parties and their counsel. On their face, these earlier motions and accusations arguably serve a legitimate purpose related to this litigation. The same is not true of Mr. Finkelstein's July 20, 2021 Letter. Mr. Finkelstein sent this Letter exclusively to public officials and the local press. See Ex. A. Mr. Finkelstein's extrajudicial letter cannot, and will not, advance any good faith argument in this case. See also Wilkerson v. Butler, 229 F.R.D. 166, 170 (E.D. Cal. 2005) (stating an allegation is "impertinent" if it is not responsive or relevant to the issues; it is "scandalous" if it improperly casts a derogatory light on someone). Absent any more legitimate reason, Mr. Finkelstein's Letter is a

naked personal attack for the sake of a naked personal attack.[3] See In re Evergreen Sec., Ltd., 570 F.3d 1257, 1276 (11th Cir. 2009) ("Conduct that is degrading and disrespectful to judges and fellow attorneys is neither zealous advocacy nor a legitimate trial tactic. Lying to a tribunal and making false accusations against judges and fellow attorneys can never be condoned."); Forte v. County of Merced, No. 1:11-cv-318, 2014 U.S. Dist. LEXIS 133826, at *36 (E.D. Cal. Sept. 23, 2014) ("Name calling, mudslinging, scandalous pleadings, and hostility towards opposing counsel undermine the integrity of the judicial process" and thus warrant sanction); Sokolsky v. Rostron, 2009 U.S. Dist. LEXIS 75414 (E.D. Cal. 2009) ("plaintiff engages in name-calling and hyperbole, which the court does not tolerate"); Alvarado Morales v. Digital Equipment Corporation, 669 F. Supp. 1173, 1187 (D.P.R. 1987) ("The federal courts do not provide a forum for mudslinging, name calling and 'privileged' defamation.").

---

[3] Mr. Finkelstein has a history of launching dual pronged attacks in both disciplinary bodies and in the press. On December 19, 2018, Mr. Finkelstein wrote a letter to the Honorable Victoria S. Darrisaw of the Dougherty County Superior Court, asking her to resign, or else he would file a complaint with the Georgia Judicial qualifications committee. Ex. C at 1. In this letter, Mr. Finkelstein accuses Judge Darrisaw of misconduct in four cases in which he represented clients in actions pending before her court. Id. at 1–2. In his letter, Mr. Finkelstein impugns Judge Darrisaw's character and qualifications. Id. at 5–6. Mr. Finkelstein transmitted this letter to other judicial officers and the same three media outlets he sent the July 20, 2021 Letter to. Id. at 8. One local news outlet ran a story on the letter and published its contents online. Marilyn Parker, Lawyer wants Dougherty Co. superior court judge to resign, WALB (Jan. 7, 2019, 10:58 PM), https://www.walb.com/2019/01/08/lawyer-wants-dougherty-co-superior-court-judge-resign/. The Judicial Qualifications Commission later dismissed the complaint against Judge Darrisaw. Although Mr. Finkelstein may argue his letter was an attempt to prompt Judge Darrisaw's resignation in advance of a complaint, his collateral attack in the press—where the Judicial Qualifications Commission was the relevant disciplinary body—demonstrates the same improper motive present in the instant action. Courts may consider past conduct from other cases in determining the imposition of sanctions in a later case. Bussey-Morice v. Kennedy, No. 6:11-cv-970, 2018 U.S. Dist. LEXIS 178137, at *56–57 (M.D. Fla. Jan. 12, 2018).

Personal attacks in the press and in the public undermine the integrity of judicial proceedings, and denigrate the legal profession. To uphold judicial integrity, and to protect the legal profession from future harm, the Court should sanction Mr. Finkelstein.

**C.    Mr. Finkelstein's Conduct as a Whole Warrants Sanction**

The content of Mr. Finkelstein's July 20, 2021 Letter itself warrants reprimand. However, Mr. Finkelstein's actions throughout this litigation also warrant sanction. On February 8, 2021, Mr. Finkelstein sent an email to Counsel and Charles Nathan Davis, City Attorney for City of Albany. Ex. D. Mr. Finkelstein's email primarily concerns discovery, but he concludes with the following:

> Also- and I probably shouldn't say this: our goals have changed slightly in this litigation. We want to get the fully measures of damages owed to our client. But we also intend to make sure that your law firm does not profit from this litigation. We estimate you have managed to churn about $100,000 in fees from this case on which we have had zero hearings, not depositions, on which you have not provided the first document in discovery. We may not be able to actually accomplish this secondary goal, but it will be to somehow- either through an action inspired by a John Grisham novel or some other legal means, ensure that every dollar your firm has been paid by the City of Albany will be repaid to the City. Howard, Mr. Luke, and I are all citizens here. Our tax dollars go to the City.

Ex. D. (emphasis added). Mr. Finkelstein then direct addresses City Attorney Davis with: "**Nathan – have you read this far?  I sure hope so**. Because **we want to make sure that every dollar wasted by the City paying this law firm is returned to the City.** And we hope that the City will never make this mistake again." Id. (emphasis in original).

Mr. Finkelstein's February 8, 2021 email serves as direct evidence he filed subsequent motions in bad faith. Id. Mr. Finkelstein states explicitly he now has a "secondary goal" of going directly after Counsel, or Counsel's law firm. Id. Mr. Finkelstein says he intends to accomplish this secondary goal "through an action inspired by a John Grisham novel or some other legal

- 9 -

means." Id. It is difficult to know what Mr. Finkelstein meant by the first part of that sentence[4], but the second part presumably refers to his second motion for sanctions, doc. 65, motion to vacate the Protective Order, doc. 68, and motion to modify the protective order, doc. 87, all filed after his email. Mr. Finkelstein seems to even acknowledge his own impropriety by opening with "I probably shouldn't say this." Ex. D.

Federal district courts have "inherent authority to sanction parties appearing before [them] for acting in bad faith, vexatiously, wantonly, or for oppressive reasons." Sassower, 973 F.2d at 81–82. However, before a court can impose sanctions against a lawyer under its inherent power, it must find that the lawyer's conduct "constituted or was tantamount to bad faith." Thomas, 293 F.3d at 1320 (citing Durrett v. Jenkins Brickyard, Inc., 678 F.2d 911, 918 (11th Cir. 1982)). "'A finding of bad faith is warranted where an attorney knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent.'" Id. (quoting Barnes v. Dalton, 158 F.3d 1212, 1214 (11th Cir. 1998)). Bad faith "does not require that the legal and factual basis for the action prove *totally* frivolous; where a litigant is substantially motivated by vindictiveness, obduracy, or mala fides, the assertion of a colorable claim will not bar assessment of [sanctions]." Mark Ind., Ltd. v. Sea Captain's Choice, Inc., 50 F.3d 730, 732 (9th Cir. 1995) (emphasis added). Sanctions, then, are justified "when a party acts for an improper purpose—even if the act consists of making a truthful statement or a non-frivolous argument or objection." Fink v. Gomez, 239 F.3d 989 (9th Cir. 2001).

---

[4] Counsel is admittedly unfamiliar with the work of author John Grisham. However, one scholar commenting on his works observed they frequently involve a "hero" who "steps unwittingly into the midst of a conspiracy." William H. Simon, Moral Pluck: Legal Ethics in Popular Culture, 101 Colum. L. Rev. 421, 426 (2001). "In such situations, the hero has to extricate himself through cleverness and initiative. His efforts invariably require violations of various enacted norms. Sometimes the violations affront professional responsibility norms . . . [s]ometimes the violations are major felonies." Id. John Grisham "clearly intends us to accept these actions as morally justified." Id.

Mr. Finkelstein's own words serve as direct evidence of improper motive. Mr. Finkelstein explicitly mentions a "secondary goal," to target Counsel directly. This secondary goal demonstrates bad faith and warrants sanction.

Mr. Finkelstein's actions also demonstrate ill intent. The Court has thrice disabused Mr. Finkelstein of the merits of his misrepresentation allegations. Despite the Court's instruction, Mr. Finkelstein now seeks to make his case in the press with his July 20, 2021 Letter. Collateral— and by extension unnecessary—attacks in the media are "arguably the best evidence of [an] improper purpose." Whitehead v. Food Ma of Miss., Inc., 332 F.3d 796, 807 (5th Cir. 2003); see also Kramer v. Tribe, 156 F.R.D. 96, 109 (D.N.J. 1994) (imposing sanctions for, among other things, an attorney's improper motives as evidenced by "litigation strategies, which included, broadcasting [the attorney's] dispute with [opposing counsel] for no other purpose than to make good on a threat and 'ruin [opposing counsel's] reputation.'"). If Mr. Finkelstein were solely concerned with upholding the integrity of the profession, he would have confined his actions to the filing of an ethics complaint with the State Bar of Georgia or a motion with this Court, as those entities have the real authority to regulate attorney conduct. However, Mr. Finkelstein's media play serves as further proof of his extrajudicial motives.

Additional evidence of improper motive is contained within an email sent to Counsel a day before his Letter on July 19, 2021. Ex. E. The email begins by again accusing Counsel of fraud, but concludes with the following:

> I can't imagine there is any prize within your grasp which would make the risk of a criminal prosecution or disbarment worthwhile. Obviously, I don't expect a response to this e-mail. And you may very well get away with it. If you don't, I will be back to say "I told you so." If you do get away with it, your reputation is still indelibly tarnished.

Ex. E. (emphasis added). Although not as damning as his prior email, his July 19, 2021 email further confirms his fixation on Counsel's reputation.

In summation, Mr. Finkelstein's continued filings despite the Court's Orders demonstrates vexatiousness. His meritless accusations show harassment. His own words and his attacks in the press evince improper purpose. Taken together, Mr. Finkelstein's conduct warrants sanction.

**D.     Appropriate Sanctions**

The inherent power to impose sanctions allows courts to vindicate their judicial authority, but such power must be used to fashion "an appropriate sanction." Chambers, 501 U.S. at 44–45. Sanctions serve to both punish past misconduct and deter future wrongdoing. See Martin v. Automobili Lamborghini Exclusive, Inc., 307 F.3d 1332, 1337 (11th Cir. 2002) (explaining that a sanction imposed under a court's inherent power should punish and deter). Sanctions should be limited to no greater than necessary to deter future misconduct. In re Engle Cases, 283 F. Supp. 3d 1174, 1255–56 (M.D. Fla. 2017) (discussing deterrence in the context of sanctions under Federal Rule of Civil Procedure 11).

Counsel seeks sanctions solely for the purpose of preventing future attempts to distract from the merits of the case. To that end, Counsel asks this Court only to admonish Mr. Finkelstein, in the hope that such an admonishment will finally put an end to his frequent attacks, and refocus his efforts on the case at hand.

### III.     CONCLUSION

For the reasons set forth below, the Court should sanction Plaintiff's counsel Mr. James Finkelstein.

Respectfully submitted this 3rd day of August, 2021.

          **FREEMAN MATHIS & GARY, LLP**

          */s/ Preston W. Ehlers*
          Preston W. Ehlers
          Georgia Bar No. 532876
          Preston.Ehlers@fmglaw.com

          *Attorney for Defendant Jameel Gulley*

100 Galleria Parkway
Suite 1600
Atlanta, GA 30339-5948
(770) 818-0000 (telephone)
(770) 937-9960 (facsimile)

## CERTIFICATE OF SERVICE

I hereby certify that I have this day electronically submitted the foregoing **DEFENDANT'S MOTION FOR SANCTIONS** to the clerk of court using the CM/ECF system, which will automatically send electronic mail notification of such filing to counsel of record who are CM/ECF participants. Counsel of record is:

Howard J. Stiller
James N. Finkelstein
606 Baldwin Drive
Albany, Georgia 31707

This 3rd day of August, 2021.

*/s/ Preston W. Ehlers*
Preston W. Ehlers
Georgia Bar No. 532876
Preston.Ehlers@fmglaw.com

*Attorney for Defendant Jameel Gulley*

FREEMAN MATHIS & GARY, LLP
100 Galleria Parkway
Suite 1600
Atlanta, Georgia 30339-5948
(770) 818-0000 (telephone)
(770) 937-9960 (facsimile)