March 18, 2022

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION
CASE NUMBER 1:19-CV-122

| | | |
|---|---|---|
| DEMETRIUS RASHARD LUKE, | ) | |
| | ) | |
| PLAINTIFF | ) | MARCH 18, 2022 |
| VS. | ) | |
| | ) | ALBANY, GEORGIA |
| JAMEEL GULLEY, | ) | |
| | ) | |
| DEFENDANT | ) | |

EXCERPT OF MOTION HEARING
PARTIAL TESTIMONY OF SUN S. CHOY
BEFORE THE HONORABLE LESLIE ABRAMS GARDNER
UNITED STATES DISTRICT COURT JUDGE


APPEARANCES:

FOR THE PLAINTIFF                JAMES N. FINKELSTEIN, ESQ.
                                 606 BALDWIN DRIVE
                                 ALBANY, GEORGIA   31707
                                 and
                                 HOWARD J. STILLER, ESQ.
                                 606 BALDWIN DRIVE
                                 ALBANY, GEORGIA   31707

FOR THE DEFENDANT                SUN S. CHOY, ESQ.
                                 PRESTON W. EHLERS, ESQ.
                                 FREEMAN MATHIS & GARY
                                 100 GALLERIA PARKWAY, SUITE 1600
                                 ATLANTA, GEORGIA   30339




MINDY MARTIN, FOCR
229-405-6818

March 18, 2022

1    (Excerpt commencing at 12:59 p.m.)
2    THE WITNESS, SUN S. CHOY, WAS PREVIOUSLY SWORN IN THIS HEARING
3             EXCERPTED FROM DIRECT EXAMINATION
4    BY MR. FINKELSTEIN:
5    Q.  All right.  Now, this is an easier question.  Since this
6    case has been filed, 1-19-CV-122, how many motions to stay
7    discovery have I or Mr. Stiller filed on behalf of the
8    plaintiff?
9    A.  I don't recall any.
10   Q.  That's right; the answer is zero.  The record will reflect
11   that.
12        Now, Mr. Choy, on January the 8th, 2021, you asked this
13   court to grant summary judgment in a secret trial; isn't that
14   true?
15   A.  I don't understand your question.
16   Q.  Didn't you convey to the Court evidence that you refused to
17   share with the plaintiff or his counsel in the form of a
18   video-recording of an interview with Mr. Gulley with a
19   confidential informant on March 13, 2017, that you wanted the
20   Court to view and grant your then-filed motion for summary
21   judgment?  Isn't that true?
22   A.  Yes, we filed a motion for summary judgment, as reflected by
23   the record.
24   Q.  And isn't my quote of your motion for summary judgment when
25   you asked the Court to view the video-recording of Mr. Gulley's

March 18, 2022

1  interview with a confidential informant that not allow the
2  plaintiff or its counsel to see it, isn't that also true?
3  A.  I believe I requested the Court to view the video for
4  purposes of promoting the purpose of qualified immunity, which
5  is immunity from suit.  So that was in conjunction with the
6  motion to stay.
7  Q.  Well, the portion of my question that's relevant to what I'm
8  asking is, it's not that you asked the Court to view it; you
9  did, in fact, submit that video to the Court ex parte --
10              THE COURT:  Are you talking about when he asked the
11  Court to review the video in camera based on the motion that the
12  Court then instituted the protective order?
13              MR. FINKELSTEIN:  No.
14              THE COURT:  Because I only recall one request that I
15  review it in camera.  And the purpose of that was that it was
16  dealing with a confidential informant, which the Court
17  determined the identity of whom needed to be protected, which is
18  why the Court imposed the protective order.  So was there
19  another time when he asked me to review it in camera --
20              MR. FINKELSTEIN:  It was before that, your Honor.  They
21  filed the motion for summary judgment, the record will reflect,
22  and in their motion, in a footnote, they said they wanted --
23  they were relying on, in their motion for summary judgment, the
24  facts in that video.  And they offered to submit it to the Court
25  in camera ex parte and not provide it to the plaintiff.  And

MINDY MARTIN, FOCR
229-405-6818

1  they did, in fact, do so.  That was long before any issue of a
2  protective order was raised --
3          THE COURT:  I thought that that's -- just recalling the
4  reason, the reason I imposed the protective order was because I
5  agreed that you had the -- you should be able to see it but that
6  it should not be disclosed any further than that.
7          MR. FINKELSTEIN:  Your Honor --
8          THE COURT:  It's all a part of one -- in tandem,
9  correct?
10         MR. FINKELSTEIN:  Your Honor, actually, no.  What
11 happened was they refused to provide discovery, and instead they
12 filed a motion for summary judgment, I believe it was on January
13 the 8th.  And if you want me to read you the exact quote from
14 their motion on the secret trial --
15         THE COURT:  Okay.  First of all, I'm going to tell you
16 right now, do not refer to it as a secret trial again.  You can
17 refer to -- there was no trial held.  There was no request for a
18 secret trial held.  I'm advising you in this court not to refer
19 to it that way.  We are all lawyers and we need to uphold
20 professionalism.
21      A request was made for me to review a video to protect the
22 identity of a confidential informant and to review it in camera.
23 That is a completely appropriate thing, which is frequently
24 asked of the Court.  And the Court can do that within certain
25 bounds.  So you can make your record, but we're not going to use

March 18, 2022

1   inflammatory language like secret trial.  Go ahead.
2   BY MR. FINKELSTEIN:
3   Q.  All right.  Let me read you, Mr. Choy, the exact language.
4   A.  Sure.
5   Q.  It will take me one second.  If you look at R-48-8, page 2,
6   footnote 1, in your motion for summary judgment, which you
7   filed, I believe, on January 2021, well before any discovery
8   conferences or any discovery disputes, in your motion for
9   summary judgment you filed, R-48-8, page 2, footnote 1,
10  accompanying defendant's statement of material facts in support
11  of motion for summary judgment, quote, With authorization of the
12  Court, defendant will file a true and correct copy of the video
13  for in-camera review only in order to protect the identity of
14  the confidential informant from plaintiff, end quote.
15      Isn't that a true and accurate statement of what you wrote
16  in the motion for summary judgment, the statement of material
17  facts, Mr. Choy?
18  A.  I do not have that in front of me, but if that's an accurate
19  representation of what was filed in the record, yes.
20  Q.  All right.  And isn't it true that you, your law firm,
21  somebody working for you, did, in fact, provide ex parte, not
22  going to use the banned words, but ex parte, the video to the
23  Court?  And by ex parte, I mean you did not provide us a copy.
24  And that was for the purpose of asking the Court to grant
25  summary judgment against the plaintiff.  Isn't that true?

March 18, 2022

1   A.  If my recollection serves me correctly, yes.
2   Q.  Okay.  Now, is there any legal authority you can find in any
3   rule of Federal Civil Procedure, any statute, any case law,
4   anywhere that authorized a party moving for summary judgment in
5   a civil lawsuit not involving the government, by that I mean not
6   representing a government entity, to ask the Court to decide the
7   motion based on evidence which they were withholding from the
8   other party?  Can you cite me any statute, federal rule, case
9   law, or even a good faith extension of existing law which
10  authorized you to transmit that video-recording of what you
11  considered to be essential evidence to the Court?
12  A.  I would just rely upon the body of case law based on
13  qualified immunity as well as the Court's inherent authority to
14  review evidence in camera.  The issue at that point, if I
15  recall, was that the plaintiffs wanted complete access to that
16  video and without any protective order and was pressing for
17  discovery.  And so I thought the best way to get the issues
18  resolved was to file that motion for summary judgment because it
19  is an immunity from suit.
20      And so what that, in fact, did was what I was hoping it
21  would do, would be trigger a hearing before the Court.  And we
22  had that hearing.  And I explained to the Court the issue that I
23  was confronting in terms of my understanding with the
24  communications with the district attorney, that there was still
25  an active criminal investigation and prosecution related to that

March 18, 2022

1  shooting, and at the same time, I wanted to protect the
2  interests of my client in getting the issue of qualified
3  immunity before the Court as soon as possible and how to balance
4  those two things because of the unique situation of having an
5  active investigation and a confidential informant.
6      And the Court had a hearing.  And I believe what the Court
7  did was bifurcate discovery and issue the protective order.  And
8  then we had the limited discovery on qualified immunity and that
9  rendered the initial motion for summary judgment moot.  We went
10 through discovery and then we filed the motion for summary
11 judgment that was ultimately granted.
12 Q.  Mr. Choy, can you explain why you filed a motion for summary
13 judgment to so-call protect the identity of your informant and
14 submitted ex parte a copy of the video to the judge --
15          THE COURT:  All right.  Before we --
16 BY MR. FINKELSTEIN:
17 Q.  -- but you did not --
18          THE COURT:  -- continue to go down this, what is the
19 relevance of this line of questioning?
20          MR. FINKELSTEIN:  The line of questioning is 28 U.S.C.
21 1927, a party that multiplies the proceedings vexatiously.  And
22 our assertion is that by filing this motion based on no law, no
23 rule, no statute, and asking the Court to basically have an ex
24 parte review of the evidence, if the Court denied it, it would
25 delay the proceeding.  If the Court granted it, it would result

1  in an appeal, a second appeal in the case, in which I would
2  assume any district court that had a trial, granted summary
3  judgment based solely on evidence withheld from the opposing
4  party --
5        THE COURT:  I'm sorry.  What does that have to do with
6  whether or not you vexatiously multiplied it?  Are you saying he
7  did it too, so you shouldn't be held accountable?
8        MR. FINKELSTEIN:  No.
9        THE COURT:  The issue before the Court is whether you
10 vexatiously multiplied litigation.
11       MR. FINKELSTEIN:  The question is whether my motions
12 for sanctions did.
13       THE COURT:  Okay.
14       MR. FINKELSTEIN:  And obviously I brought up the fact
15 that they had filed this motion for summary judgment in January
16 of 2021.  So if the question is should I be sanctioned because
17 they did this, I would assume that the answer would be no.
18       THE COURT:  Okay.  So your point there is made.  So
19 your point is that when they filed this motion on January 8th to
20 which -- that was followed by a motion for leave to file the
21 video for in camera review, which the Court then held a hearing
22 on February 11th and granted in part by imposing the protective
23 order, so that certainly it was not a frivolous motion that he
24 filed.  But because he filed that motion, that was one basis of
25 your motion for sanctions, and therefore your motion for

1  sanctions can't be considered a vexatious multiplication because
2  it was in response to this motion?
3              MR. FINKELSTEIN:  Our motion for sanctions was
4  legitimate because their motion for summary judgment in which
5  they asked the Court and did, in fact, transmit ex parte --
6              THE COURT:  But you're acting like that was the only
7  point of the summary judgment.  All right.  So I understand.  I
8  understand what your argument is there.
9              MR. FINKELSTEIN:  Yes, your Honor.
10             THE COURT:  You've established the facts.  Let's move
11 on.
12 BY MR. FINKELSTEIN:
13 Q.  All right.  Now, just to be clear, Mr. Choy, there is
14 nowhere in your filings with your motion for summary judgment
15 that you also filed a motion for protective order, is there?
16 A.  I can't recall.
17 Q.  In fact, is there any place in this entire lawsuit where you
18 can find that you filed a motion for protective order to protect
19 the confidentiality of the confidential informant?
20 A.  Titled that, I don't recall, but I believe the motion to
21 file in camera is what precipitated the hearing and the Court
22 granting a protective order to protect the identity of the
23 confidential informant.
24 Q.  Wasn't it, in fact, your refusal to provide discovery in our
25 letter to you and our request to the courtroom deputy to

1   schedule a phone conference that resulted in the discussion of
2   whether or not you would provide discovery, and it was only
3   during, and I can't remember if it was the first or the second
4   phone conference, I believe it was the first one, that you
5   stated the need to protect the confidentiality of the informant.
6   It wasn't you that requested that conference.  It was the
7   plaintiff.  Isn't that true?
8   A.  I don't recall, but I believe the whole point of the
9   discovery dispute was that the plaintiff required the disclosure
10  of the identity of the confidential informant.  And while in
11  communications with the district attorney's office, they
12  informed us that the investigation was ongoing.  And so from our
13  standpoint, we certainly did not want to be in a position of
14  interfering with the criminal prosecution and then unwittingly
15  putting the confidential informant in danger but then at the
16  same time executing our ethical obligations to defend our client
17  and asserting the qualified immunity defense as soon as possible
18  in the proceedings.
19  Q.  Well, if that was your concern, then why did your law firm
20  in a public record identify the confidential informant by name
21  and state that he was the confidential informant on November 17,
22  2020, two months before you filed that motion?
23  A.  I do not know what public document you're referring to.
24          THE COURT:  And we're not going to get into it.  We're
25  not doing this.  You've made your point with regard to you don't

Case 1:19-cv-00122-LAG   Document 145   Filed 03/29/22   Page 11 of 12    11

March 18, 2022

1  believe that you vexatiously multiplied litigation because you
2  felt you had to respond to it.  Move on.
3           MR. FINKELSTEIN:  Yes, your Honor.
4  BY MR. FINKELSTEIN:
5  Q.  Mr. Choy, was the letter that I wrote to the city commission
6  ever filed by me in a United States District Court anywhere,
7  including this one?
8  A.  Filed by you?  I don't believe so.
9       (Excerpt concludes at 1:14 p.m.)
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

March 18, 2022

CERTIFICATE

I HEREBY CERTIFY THAT THE FOREGOING IS A TRUE AND ACCURATE TRANSCRIPT OF THE PROCEEDINGS.

/S/ Mindy Martin                                  MARCH 29, 2022
MINDY MARTIN, RMR, FCRR
UNITED STATES COURT REPORTER
Albany, Georgia  31701
Phone:  229-405-6818