# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

October 03, 2022

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number: 22-10316-BB
Case Style: Demetrius Luke v. Jameel Gulley
District Court Docket No: 1:19-cv-00122-LAG

Electronic Filing
All counsel must file documents electronically using the Electronic Case Files ("ECF") system, unless exempted for good cause. Although not required, non-incarcerated pro se parties are permitted to use the ECF system by registering for an account at www.pacer.gov. Information and training materials related to electronic filing are available on the Court's website. Enclosed is a copy of the court's decision filed today in this appeal. Judgment has this day been entered pursuant to FRAP 36. The court's mandate will issue at a later date in accordance with FRAP 41(b).

The time for filing a petition for rehearing is governed by 11th Cir. R. 40-3, and the time for filing a petition for rehearing en banc is governed by 11th Cir. R. 35-2. Except as otherwise provided by FRAP 25(a) for inmate filings, a petition for rehearing or for rehearing en banc is timely only if received in the clerk's office within the time specified in the rules. Costs are governed by FRAP 39 and 11th Cir.R. 39-1. The timing, format, and content of a motion for attorney's fees and an objection thereto is governed by 11th Cir. R. 39-2 and 39-3.

Please note that a petition for rehearing en banc must include in the Certificate of Interested Persons a complete list of all persons and entities listed on all certificates previously filed by any party in the appeal. See 11th Cir. R. 26.1-1. In addition, a copy of the opinion sought to be reheard must be included in any petition for rehearing or petition for rehearing en banc. See 11th Cir. R. 35-5(k) and 40-1 .

Counsel appointed under the Criminal Justice Act (CJA) must submit a voucher claiming compensation for time spent on the appeal no later than 60 days after either issuance of mandate or filing with the U.S. Supreme Court of a petition for writ of certiorari (whichever is later) via the eVoucher system. Please contact the CJA Team at (404) 335-6167 or cja_evoucher@ca11.uscourts.gov for questions regarding CJA vouchers or the eVoucher system.

Pursuant to Fed.R.App.P. 39, costs taxed against the appellee.

Please use the most recent version of the Bill of Costs form available on the court's website at www.ca11.uscourts.gov.

For questions concerning the issuance of the decision of this court, please call the number referenced in the signature block below. For all other questions, please call Tonya L. Richardson, BB at (404) 335-6174.

Sincerely,

DAVID J. SMITH, Clerk of Court

Reply to: Djuanna H. Clark
Phone #: 404-335-6151

OPIN-1A Issuance of Opinion With Costs

[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

---

No. 22-10316

Non-Argument Calendar

---

DEMETRIUS RASHARD LUKE,

Plaintiff-Appellant,

*versus*

JAMEEL H. GULLEY,

Defendant-Appellee.

---

Appeal from the United States District Court

for the Middle District of Georgia

D.C. Docket No. 1:19-cv-00122-LAG

---

Before WILLIAM PRYOR, Chief Judge, ROSENBAUM, and GRANT, Circuit Judges.

PER CURIAM:

This appeal is the second time we have reviewed Demetrius Rashard Luke's amended complaint against Jameel H. Gulley of the Albany Police Department for malicious prosecution. *See* 42 U.S.C. § 1983. In Luke's first appeal, we vacated an order dismissing his complaint for failure to allege a favorable termination on a charge of felony murder. *Luke v. Gulley*, 975 F.3d 1140, 1144–45 (11th Cir. 2020). Luke now appeals the summary judgment in favor of Detective Gulley based on qualified immunity. The district court ruled that, even though the detective's affidavit was insufficient to provide probable cause to support the warrant to arrest Luke, the detective had at least arguable probable cause to arrest Luke. But because Luke established that the legal process underlying his seizure was constitutionally infirm and it would not have been otherwise justified, Detective Gulley does not enjoy immunity from suit. *See id.* at 1144; *accord Laskar v. Hurd*, 972 F.3d 1278, 1284 (11th Cir. 2020). So, we must again vacate and remand for further proceedings.

## I. BACKGROUND

Luke's civil suit followed the termination of his prosecution for crimes related to a gang shootout. On March 4, 2017, while several of the South Side Bloods gathered outside Eric Davis's

residence on Jackson Street, John Lewis and members of the West Side Rattlers approached in Lewis's truck. Lewis and his passengers opened fire on the Bloods, whose members retaliated. Lewis was shot in the back of the head and his truck crashed into a tree.

Officers initially had little evidence to identify the shooters. Detective Gulley saw three black men flee from the scene, but nearby officers whom he radioed found no one in the vicinity. The officers collected only a handgun and expended cartridge cases in the passenger side floorboard of Lewis's truck, in the bed of the truck, in the alley adjacent to Davis's residence, and behind the residence. An eyewitness reported that one of the men who fled the scene had dreads in his hair, but the witness refused to provide a written statement. And Detective Gulley inquired in vain with nearby hospitals about their treatment of gunshot victims.

On March 5, 2017, the Albany Police Department received an anonymous tip on its crime stoppers hotline. The tipster provided "[s]econd hand information" that Demetrius Luke, Corey Wright, and two men known as Booman and Boonie were involved in the shootout. The tipster stated that Luke was a member of "The Bloods," he had "[g]uns," he hung out on "South Jackson and Willard," and he drove a red two-door car. The tipster described Luke as being 21 to 22 years old, 5'6" to 5'7" tall, "[s]kinny," and having "[b]lack/low cut" hair and a "[g]oatee." Those physical characteristics matched a mugshot of Luke.

On March 13, 2017, Detective Gulley and Investigator Catoa Baldwin interviewed an eyewitness to the shooting. The

confidential informant stated that Lewis and other Rattlers "came shooting at (Bloods) Luke and his boys." The informant identified Markell Brown and Eric Davis, whose nickname was Booney, as shooters. The informant reported that "David Luke" had "jump[ed] out a vehicle with some kind of machine gun or chopper" and selected David Luke's picture from a photographic array. The informant recalled that "they were shooting so much that it sounded like firecrackers going off." The informant also stated that Adonis Warren, whose nickname was Booman, arrived after the shooting ended and that two men, one young and one older, jumped out of the truck "after [it] was shot up and crashed" and then ran from the scene while tucking guns into the waistband of their pants. The informant added that "they all were on Facebook arguing and talking trash to each other."

Officers verified most of the informant's facts. Brown had a "twist in his head and was wearing Georgia boots" when officers "made contact with [him] again after an initial interview." Officers also determined that the two men who fled from the truck were Jamarious Wright and 15-year-old Jarod Holsey. After their arrest, "these individuals" "confirm[ed] the informant's version of the events."

Further investigation eliminated Luke's brother, David Luke, as a suspect. When interviewed, David provided an alibi that Detective Gulley verified. The detective "deduced" that the informant "meant [David's brother] Demetrius" based in part on "speaking with Investigator Baldwin," who "knows Demetrius as a

person that hangs around [the location of the shooting] and is usually in the area."

Detective Gulley applied for a warrant to arrest Luke. The detective averred that, "to the best of his knowledge and belief," "Demetrius Luke did cause the death of John Jo[se]ph Lewis when he shot at the truck Lewis was driving." The detective also averred, "This warrant is based on the Officer's Investigation, and eye witness verbal statements." The detective told the magistrate judge that Luke was involved in a "gang shooting."

The magistrate issued the warrant, and officers arrested Luke on March 17, 2017. On May 18, 2017, Luke made bond and was released from the Dougherty County Jail.

On November 22, 2017, a grand jury in Georgia returned a 20-count indictment against Luke, Davis, Jones, Brown, Warren, Wright, Holsey, and a female accomplice. The grand jury charged Luke for the felony murder of and aggravated assault of John Lewis; aggravated assaults of Wright and of Holsey; three counts of possessing a firearm in the commission of a felony; and violating the Street Gang Terrorism and Prevention Act. Luke, Davis, and Jones moved to dismiss the charges on the ground they were acting in self-defense.

Luke, Davis, and Jones accepted an offer to dismiss their criminal charges by *nolle prosequi* in exchange for testifying against their codefendants. The State chose to dismiss the charges because "the current state of evidence is unsubstantial to succeed

at trial" due to the number of "few witnesses . . . [being] willing to testify" "dwindl[ing] further," as was common "in situations that allege gang participation and violence."

The trial court held a two-day hearing on the motion during which Luke, Jones, Davis, Davis's girlfriend, and Detective Gulley testified. According to the prosecutor, "[t]he allocution statements made by Davis, Luke, and Jones w[ere] largely consistent with prior statements given by other witness[es]" that Lewis and other occupants of his truck "fired upon them first" and that "Luke, Davis, and Jones were justified in returning fire." But only "Davis and Jones testified that they returned fire." At the conclusion of the hearing, the trial court declined to rule on the defendants' motion to dismiss based on self-defense, consented to the motion to *nol pros*, and dismissed all charges against Luke, Davis, and Jones.

Luke filed an amended complaint in a Georgia court against Detective Gulley, who then removed the action to federal court, *see* 28 U.S.C. § 1441(c). Luke complained of a process-based seizure in violation of the Fourth Amendment and of malicious prosecution and false arrest under state law. The detective succeeded in having Luke's complaint dismissed for failure to allege a favorable termination, but we vacated the order of dismissal and remanded. *Luke*, 975 F.3d at 1144–45.

On remand, the district court allowed discovery on the issue of qualified immunity. When deposed, Investigator Gulley testified that the "eyewitness" in his affidavit was the confidential informant. The investigator insisted that the informant "gave the wrong

person" and "said the wrong name." He explained that the "officer's investigation" in his affidavit referred to "the totality of everything," including the investigative file.

After the parties filed competing motions for summary judgment, the district court granted Detective Gulley's motion and denied Luke's motion. The district court ruled that the detective did not violate the Fourth Amendment. The district court determined that, although the detective's affidavit lacked sufficient information to support a finding of probable cause by the issuing magistrate, the detective had "probable cause, and certainly arguable probable cause, to arrest [Luke] for Lewis' [sic] murder" without a warrant based on the totality of his investigation. The district court also determined that Luke could not satisfy the common-law element of malice, as defined under state tort law. The district court declined to exercise jurisdiction over Luke's state-law claims.

## II. STANDARD OF REVIEW

We review a summary judgment based on qualified immunity *de novo. Williams v. Aguirre,* 965 F.3d 1147, 1156 (11th Cir. 2020). Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). To make that "determination, we 'view the evidence and all factual inferences therefrom in the light most favorable to the non-moving party, and resolve all reasonable doubts about the facts in favor of the non-

Opinion of the Court

movant.'" *Williams*, 965 F.3d at 1156 (quoting *Skop v. City of Atlanta*, 485 F.3d 1130, 1136 (11th Cir. 2007)).

## III. DISCUSSION

Law enforcement officers enjoy qualified immunity from civil damages for their discretionary acts when their conduct does not violate a federal right that was clearly established at the time of the challenged action. *Id.* To receive qualified immunity, an officer must prove he was performing a discretionary function. *Id.* Because Luke does not dispute that Detective Gulley was performing a discretionary act when he applied for the arrest warrant, Luke must prove that qualified immunity is not appropriate. *See id.* at 1156–57.

We begin with the first half of the qualified immunity analysis: whether Officer Gulley violated a federal statutory or constitutional right. *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018) (quotation omitted). Luke argues that Detective Gulley violated his right under the Fourth Amendment to be free from an unreasonable seizure as a result of a malicious prosecution. 42 U.S.C. § 1983; *Whiting v. Traylor*, 85 F.3d 581, 583–84 (11th Cir. 1996). In Luke's first appeal, we simplified our standard for malicious prosecution into two elements: "the plaintiff must prove (1) that the defendant violated his Fourth Amendment right to be free from seizures pursuant to legal process and (2) that the criminal proceedings against him terminated in his favor." 975 F.3d at 1144. The first element requires proof that "the legal process justifying his seizure was constitutionally infirm" and that "his seizure would

not otherwise be justified without legal process." *Williams*, 965
F.3d at 1165. We concluded in Luke's first appeal that he received
a favorable termination of his charge for felony murder. *Luke*, 975
F.3d at 1144. So we need only address whether Luke can prove that
his arrest warrant was constitutionally infirm and that his seizure
would not have been justified without legal process. *See Williams*,
965 F.3d at 1165.

   Under the Fourth Amendment, "before a warrant for . . . ar-
rest . . . can issue . . . the judicial officer issuing such a warrant
[must] be supplied with sufficient information to support an inde-
pendent judgment that probable cause exists for the warrant."
*Whiteley v. Warden, Wyo. State Penitentiary*, 401 U.S. 560, 564
(1971). The determination of probable cause turns on "what the
affidavit charging the plaintiff stated." *Williams*, 965 F.3d at 1163
(internal quotation marks) (alteration adopted). The "warrant affi-
davit must set forth particular facts and circumstances underlying
the existence of probable cause . . . ." *Franks v. Delaware*, 438 U.S.
154, 165 (1978). We have held that an arrest warrant is constitu-
tionally infirm when either "the officer who applied for the warrant
should have known that his application failed to establish probable
cause or that an official, including an individual who did not apply
for the warrant, intentionally or recklessly made misstatements or
omissions necessary to support the warrant." *See Williams*, 965
F.3d at 1165. So our simplified standard for malicious prosecution
incorporates the common law elements of (express or implied)

malice and lack of probable cause. *See Luke*, 975 F.3d at 1144; *Williams*, 965 F.3d at 1157.

Detective Gulley does not dispute that his affidavit lacked sufficient information to provide the magistrate judge probable cause to issue the warrant to arrest Luke for Lewis's murder. The detective's affidavit is skeletal, consisting of a conclusory allegation that Luke killed Lewis by "sho[oting] at the truck Lewis was driving" "based on the [detective]'s Investigation, and eye witness verbal statements." The affidavit is devoid of relevant and reliable facts from which one could infer that Luke murdered Lewis. *See id.* That Detective Gulley told the magistrate judge there was a "gang shooting" added no information to implicate Luke in Lewis's death. And we do not consider in the calculus of probable cause that the detective relied on the investigative file and his intuition to identify Luke as a suspect because no record exists that he submitted the file to or explained his thought processes to the magistrate judge. *See Whiteley*, 401 U.S. at 565 n.8 ("[A]n otherwise insufficient affidavit cannot be rehabilitated by testimony concerning information possessed by the affiant when he sought the warrant but not disclosed to the issuing magistrate"). Because Detective Gulley's affidavit "consists of nothing more than [his] conclusion that . . . [Luke] perpetrated the offense described," it "could not support the independent judgment of [the] disinterested magistrate" judge. *See id.* at 565.

Even if, as Detective Gulley argues, his investigation provided probable cause to arrest Luke, the record contains evidence

that Luke was detained "too long to be justified without legal process." *See Williams*, 965 F.3d at 1167; *see, e.g., Cnty. of Riverside v. McLaughlin*, 500 U.S. 44, 57 (1991) (treating as presumptively unconstitutional a seizure beyond 48 hours without a probable cause determination). Luke was imprisoned 61 days. A seizure of that length cannot be justified without a lawful warrant.

To be sure, the detective's possession of probable cause is relevant to the issue of damages, *see Williams*, 965 F.3d at 1161, but the parties present no argument about and we do not decide any issue of damages. "When constitutional rights are violated, a plaintiff may recover nominal damages even though he suffers no compensable injury." *Kelly v. Curtis*, 21 F.3d 1544, 1557 (11th Cir. 1994) (emphasis omitted). Luke could recover nominal damages if he suffered a violation of his right to be free from an unreasonable seizure. But to "recover actual damages," Luke must establish that, but for Detective Gulley's conclusory affidavit, "he would have been released earlier or would not have faced detention." *Williams*, 965 F.3d at 1161 (internal quotation marks omitted) (alteration adopted).

The district court also erred by using contemporary Georgia law to evaluate the detective's conduct. "[T]he Supreme Court has clarified that the relevant common-law principles are those that were 'well settled at the time of section 1983's enactment.'" *Id.* at 1159 (quoting *Nieves v. Bartlett*, 139 S. Ct. 1715, 1726 (2019)) (alteration adopted); *accord, Thompson v. Clark*, 142 S. Ct. 1332, 1337 (2022). By then, proof of the absence of probable cause allowed a

jury to infer malice for the common-law tort of malicious prosecution. *See Williams*, 965 F.3d at 1160–61; *Laskar*, 972 F.3d at 1295–96. A district court errs when it relies on modern tort law or the law of the forum state—for example, of Alabama, Georgia, or Florida—to resolve a claim of unreasonable seizure pursuant to legal process under section 1983, as occurred here.

Having concluded that Officer Gulley violated Luke's Fourth Amendment rights, we turn next to whether the unlawfulness of his conduct was clearly established at the time. We hold that it was. Under longstanding Supreme Court precedent, an officer must provide particular information to support an arrest warrant. *See Whiteley*, 401 U.S. at 564; *Franks*, 438 U.S. at 165. Our precedents agree—an officer who seeks an arrest warrant based on a 'conclusory affidavit' that 'clearly is insufficient to establish probable cause' is not entitled to qualified immunity." *Kelly*, 21 F.3d at 1555 (quoting *Garmon v. Lumpkin Cnty.*, 878 F.2d 1406, 1408 (11th Cir. 1989)). Here, no "reasonably competent officer" could have concluded that a warrant should issue based on the glaring deficiencies in the affidavit. *Malley v. Briggs*, 475 U.S. 335, 341 (1986). As a result, the unlawfulness of Detective Gulley's conduct was clearly established when he acted and he was not entitled to qualified immunity.

Luke raises three other arguments, each of which lack merit. First, Luke challenges the denial of his motion to compel discovery but because he does not dispute that his motion was untimely, the district court acted within its discretion in denying it. *See Josendis*

*v. Wall to Wall Residence Repairs*, 662 F.3d 1292, 1307 (11th Cir. 2011) (stating that "we have often held that a district court's decision to hold litigants to the clear terms of its scheduling orders is not an abuse of discretion"). Second, Luke argues that he was entitled to sanctions because Detective Gulley's counsel allegedly made misrepresentations of fact in his filing, but the district court found that counsel's filings accurately recounted information in the detective's report and the confidential informant's video interview. The district court reasonably concluded that a disagreement over the interpretation of the facts is not a proper basis for sanctions. Finally, Luke argues that the district court erred in denying his motion for summary judgment. In the light of our opinion clarifying the law that governs Luke's complaint, we express no view on the merits of that motion and leave it for the district court to address in the first instance should Luke choose to renew the motion on remand.

## IV. CONCLUSION

We **VACATE** the order granting summary judgment in Detective Gulley's favor and **REMAND** for further proceedings.